**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00266-RSE**

**CHRISTY R.** **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security* **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

The Commissioner of Social Security denied Claimant Christy R.'s ("Claimant's") applications for disability insurance benefits and supplemental security income benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 14; DN 15). The Commissioner filed a responsive Fact and Law Summary (DN 17). The time for Plaintiff to file a reply has expired.

The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 12; DN 13).

I. Background

Christy R. ("Claimant") applied for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act on September 27, 2022. (Transcript, hereinafter, "Tr." 213-235). Her allegedly disabling conditions (back injury and foot, ankle, and leg injury) are the result of a motor vehicle accident on May 12, 2021. (Tr.

263, 348). Claimant's applications were denied at the initial review level on December 22, 2022. (Tr. 83-98) and again at the reconsideration review level on April 20, 2023 (Tr. 99-114).

At Claimant's request (Tr. 138), Administrative Law Judge Stephen Thompson ("ALJ Thompson") conducted a remote administrative hearing on November 28, 2023. (Tr. 37-82). Claimant appeared by telephone with her representative. (Tr. 39). An impartial vocational expert also participated. (Tr. 40). Claimant provided the following relevant testimony during her hearing.

Claimant was 53 years old at the time of the hearing. (Tr. 45). She is married and lives with her husband and his parents. (Tr. 47). She can drive. (Tr. 48). Claimant graduated high school and earned a certificate from cosmetology school. (Tr. 48-49). She last worked at GE in May 2021 in stocking and production. (Tr. 49-51). Prior to that she worked in management at McDonald's and worked at a nursing home. (Tr. 51-52).

Claimant had surgery for urinary bladder control a few weeks before her hearing. (Tr. 61-62). Before the surgery, she was peeing herself often and having to change clothes two to three times a day despite wearing pads. (Tr. 63-64). She reports improvement following the surgery and improvement in taking Oxybutynin. (Tr. 61-62, 64). Having kidney stones has previously aggravated her bladder control issues. (Tr. 61).

As for issues with her lower extremities, Claimant reports tingling in her left leg, going all the way to her foot, which causes her to feel unbalanced and sometimes fall. (Tr. 62). Because she cannot use her leg at all going up or down stairs, she locates elevators and walkways when she is in public. (Tr. 64). She has osteoarthritis in her hands, left knee, and lower back. (Tr. 67). For her back pain, Claimant had three rounds of steroid injections but has not discussed possible surgery with her physicians. (Tr. 66). Due to these issues, she spends about half of her day laying down. (Tr. 70).

Claimant can bathe and dress herself and can do some cooking and food preparation, with breaks. (Tr. 57). Her husband takes care of household chores like yardwork and grocery shopping. (Tr. 57-58). But she reports being able to fold clothes if her husband brings them to her, making her bed, attending doctor's appointments, visiting her parents and her sister who live close by, visiting with her sons, and going to church sometimes. (Tr. 57-58, 65). A few months before the hearing, Claimant went on vacation in Gulf Shores, Alabama. (Tr. 69).

Claimant estimates she could walk "a minute or two" before it becomes a problem. (Tr. 67). She cannot stand "very long at all" without taking a break and sitting down. (Tr. 68). When moving, she goes very slowly and takes great precautions. (*Id.*). She is "okay sitting" but getting back up is difficult. (*Id.*). Claimant also estimates she can lift "a couple of pounds." (Tr. 67).

After considering Claimant's testimony and the medical records submitted, ALJ Thompson issued an unfavorable decision on April 2, 2024. (Tr. 17-30). He applied the five-step sequential analysis for evaluating adult disability claims from 20 C.F.R. § 404.1520 and found as follows. First, Claimant has not engaged in substantial gainful activity since May 12, 2021, her alleged onset date. (Tr.19). Second, Claimant has the following severe impairments: osteoarthritis and lateral meniscus tear of the left knee, degenerative disc disease of the lumbar spine, peroneal tendonitis of the left leg, left ankle sprain, and obesity. (Tr. 20-21). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 22).

At Step Four, ALJ Thompson found Claimant has the residual functional capacity to perform "light work" as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations:

> The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. The claimant should never climb ladders, ropes, or scaffolds; She

> should avoid concentrated exposure to vibrations and hazards such as moving machinery and unprotected heights. She can occasionally push and pull and operate foot controls. She requires a work environment that allows access to a restroom.

(Tr. 22-26). Additionally at Step Four, ALJ Thompson determined Claimant can perform her past relevant work as a fast food services manager, power screwdriver operator, and composite work as a team coordinator and personnel scheduler. (Tr. 27).

Because ALJ Thompson determined Claimant was not disabled at Step Four, there was no requirement for him to proceed to Step Five of the inquiry. 20 C.F.R. § 404.1520 § 404.1520(a)(4); *see also McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (if claimant is found to be disabled or not disabled at a step, the inquiry is ended at that step). ALJ Thompson concluded Claimant has not been under a disability, as defined in the Social Security Act, from May 12, 2021, through the date of decision. (Tr. 30).

Claimant administratively appealed ALJ Thompson's denial. (Tr. 209-211), but the Appeals Council declined review (Tr. 1-3). At that point, ALJ Thompson's denial became the final decision of the Commissioner, and Claimant appealed to this Court pursuant to § 405(g). (DN 1).

II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Analysis

Claimant challenges two aspects of ALJ Thompson's RFC determination at Step Four. The RFC is "the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1). In determining a claimant's RFC, an ALJ assesses "all of the relevant evidence in [the claimant's] case record." *Id.* This includes medical records, opinions from medical sources regarding what a claimant can still do, the claimant's subjective complaints, pain, and symptoms, as well as descriptions and observations from the claimant's family and third parties. *Id.* at (a)(3).

### A. ALJ Thompson's Evaluation of the State Agency Physician Opinions

Claimant argues ALJ Thompson failed to issue a clear persuasiveness finding as to the State agency consultants' ("SA consultants") opinions because his analysis of the supportability

and consistency factors was insufficient. (DN 14, at PageID # 1153-57). Claimant characterizes ALJ Thompson's analysis as "ambiguous" because he found the opinions to be partially persuasive but then indicated that the postural limitations they assessed were "not persuasive **in describing the extent of claimant's postural limitations."** (*Id.* at PageID # 1154 (emphasis in original)).

In formulating a claimant's RFC, the ALJ must evaluate the persuasiveness of the medical opinions in the record. 20 C.F.R. §§ 404.1520c, 404.1529(a). The regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion. *Id.* ALJs instead evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* at (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination, which is known as the "articulation requirement." *Id.* at (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at (c)(2). To further illuminate this distinction, "supportability" relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their *own* opinion; by contrast, "consistency" relates to the relationship of a medical source's opinion to *other* medical opinions and evidence of record. 20 C.F.R. § 416.920c(c)(1)-(2).

The Sixth Circuit has not defined a specific standard to determine whether an ALJ sufficiently complied with the "articulation requirement." However, courts in this Circuit have applied the requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. Aug. 13, 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation.") (emphasis in original); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

Dr. Stephen J. Spanbauer assessed the evidence at the Agency's initial stage of review and submitted findings on November 18, 2022. (Tr. 84-90, 91-97). And Dr. Howard Bronstein assessed the evidence at the Agency's reconsideration stage of review and submitted identical findings on April 20, 2023. (Tr. 101-107). Both physicians opined that Claimant could lift and carry up to twenty pounds occasionally and ten pounds frequently; stand or walk up to six hours in an eight-hour day, sit up to six hours; frequently push and pull with the left foot; frequently climb ramps and stairs, balance, crouch, and crawl; occasionally stoop, climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to vibration and hazards. (Tr. 87-88; 104-05).

At Step Four, ALJ Thompson recounted the SA physicians' opined limitations and provided the following analysis:

> These consultants had cited to findings of 5/5 strength and improvements in the claimant's gait but with spasm and rigidity in the thoracic spine (Exhibit 7A/5). While these observations do generally support the opinion that the claimant can perform light exertion with occasional stooping, they do not support findings that claimant can frequently crouch and crawl. Moreover, these consultants did not apparently account for claimant's obesity, which would contribute to postural limitations. (Exhibit 14F/13). Nevertheless, podiatry records indicate some chronic ankle weakness and limited range of motion that improved with treatment, further consistent with an ability to carry twenty pounds and stand or walk for six hours a day with limited exposure to vibration or hazards (Exhibit 11F/11, 17, 45-46, 75). Therefore, these prior administrative medical findings are persuasive in addressing the claimant's exertional abilities and environmental limitations, although they are not persuasive in describing the extent of the claimant's postural limitations.

(Tr. 26).

Claimant says the ALJ's determination that "the postural limitations" assessed by the SA consultants were "not persuasive" is ambiguous. (DN 14, at PageID # 1154-55). To Claimant, it is unclear what the ALJ was trying to explain by citing to the podiatry records and whether ALJ Thompson believed adding postural limitations were required or that fewer postural limitations were needed. (*Id.*). ALJ Thompson's analysis, Claimant alleges, leaves unclear which aspects of the opinions he found persuasive and which aspects he did not. (*Id.*). Additionally, Claimant submits ALJ Thompson's analysis does not provide sufficient explanation of the consistency and supportability factors to allow the Court to understand his path of reasoning and whether such analysis is supported by substantial evidence. (*Id.* at PageID # 1155-56). These errors, Claimant concludes, are not harmless, because had the ALJ properly evaluated these medical opinions, the result of his decision may have changed, and the VE may have provided a different response to the ALJ's hypotheticals. (*Id.* at PageID # 1156-57).

The Commissioner responds that ALJ Thompson reasonably evaluated the SA consultants' opinions and adequately assessed their supportability and consistency pursuant to 20 C.F.R. § 404.1520c. (DN 17, at PageID # 1178). A simple read of the ALJ's analysis, the Commissioner says, shows that ALJ Thompson included postural limitations in nearly all areas. (*Id.*). Comparing the SA consultants' opined limitations with the ALJ's opined limitations in the RFC, according to the Commissioner, shows no ambiguity. (*Id.* at PageID # 1178-79). The Commissioner emphasizes that ALJs are not required to explicitly go through each limitation in a medical opinion to satisfy the regulations. (*Id.*). Because ALJ Thompson provided a sufficient analysis of the SA consultants' opinions, the Commissioner concludes no further analysis was necessary and no error occurred. (*Id.* at PageID # 1180-81).

Addressing ALJ Thompson's analysis of supportability and consistency first, the Court finds no error. As to "supportability," the Court notes that opinions of State agency consultants are "uniquely situated" because these consultants do not examine claimants. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 WL 1199025, at *6-7 (W.D. Ky. Mar. 20, 2024) (quoting *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22cv-3652, 2023 WL 2623571, at *6-7 (S.D. Ohio Mar. 24, 2023)). Any failure by ALJ Thompson to discuss the internal supportability of the SA consultants' opinions came with good reason: the SA consultants did not perform objective diagnostic testing and did not observe claimant. Regardless, ALJ Thompson did discuss how the records of Claimant's 5/5 strength and improvements of gait, cited by the consultants, did not support an ability to frequently crouch or crawl. (Tr. 26). In alignment with this finding, ALJ Thompson provided greater limitation on Claimant's ability to climb ramps and stairs, balance, crouch, or crawl by restricting her to *occasionally* performing these activities, instead of *frequently* performing these activities as the consultants had opined. (*Compare* Tr. 22-23 *with* Tr. 87-88; 104-

05). As to supportability, ALJ Thompson also considered that the consultants did not assess Claimant' obesity, which contributed to further limitation on her postural abilities. ALJ Thompson, accordingly, provided a sufficient supportability analysis to comply with the regulations.

The court likewise finds ALJ Thompson's consistency analysis was sufficient. ALJ Thompson referenced Claimant's podiatry records that indicate some chronic ankle weakness and limited range of motion that improved with treatment. (Tr. 26). He then stated such records were consistent with an ability to carry twenty pounds, with standing and walking for six hours a day, and with limited exposure to vibration and hazards. (*Id.*). ALJ Thompson's reference to records reflecting Claimant's obesity likewise touched on the consistency of the SA consultants' opinions since Claimant's obesity contradicts the SA consultants' postural limitations. (*Id.*). As with the supportability analysis, the Court finds ALJ Thompson's consistency analysis complies with the articulation requirements in the regulations.

The Court further declines to find ALJ Thompson's analysis was harmfully ambiguous. Again, he stated that the SA consultants' findings were not persuasive as to Claimant's postural limitations. His RFC limitations reflect this. For instance, the SA consultants limited Claimant to *frequent* climbing of ramps and stairs, balancing, crouching, and crawling; whereas, ALJ Thompson limited Claimant to performing these postural activities *occasionally.* (*Compare* Tr. 87 *with* Tr. 22). And the SA consultants limited Claimant to *occasional* climbing of ladders/ropes/scaffolds; but ALJ Thompson found Claimant could *never* perform such postural activities. (*Compare* Tr. 87 *with* Tr. 22). Because ALJ Thompson implemented more restrictive postural limitations in the RFC than those opined by the SA consultants, the Court can clearly trace his path of reasoning.

ALJ Thompson's determination that the SA consultants' findings were persuasive as to Claimant's exertional abilities and environmental limitations is reflected in his RFC as well. ALJ Thompson adopted the SA consultants' restriction that Claimant avoid concentrated exposure to vibration and hazards. (*See* Tr. 22-23, 87). Similarly, ALJ Thompson adopted the SA consultants' exertional limitations related to standing and walking by finding Claimant can perform "light work."[1]

The only exertional limitation that ALJ Thompson did not adopt verbatim from the SA consultants' opinions was that Claimant was "limited" beyond lifting and/or carrying in her ability to "push and/or pull in lower extremities." (Tr. 87). ALJ Thompson determined Claimant could occasionally push and pull and operate foot controls. The SA consultants' use of "limited" and ALJ Thompson's use of "occasionally" are not contradictory.

As noted by the Commissioner, ALJs are not required to "list out each" of a physician's individual remarks or limitations where an ALJ summarizes the physician's report and explains the persuasiveness of the physician's opinion. *See Napier v. Comm'r of Soc. Sec.*, 127 F. 4th 1000, 1007 (6th Cir. 2025); *Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022) ("Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion . . . ."). The Court can trace ALJ Thompson's path of reasoning as to why some of the SA consultants' limitations were persuasive and why some were not. His evaluation of the SA consultants' opinions complies with the regulations and is supported by substantial evidence in the record. No error results.

[1] A "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

B. ALJ Thompson's Evaluation of Claimant's Chronic Urinary Symptoms

Claimant next argues ALJ Thompson failed to properly assess her RFC because he did not adequately evaluate and account for her chronic urinary symptoms, including uncontrolled incontinence. (DN 14, at PageID # 1158).

At Step Two, ALJ Thompson analyzed whether Claimant's incontinence constituted a severe medically determinable impairment. (Tr. 20). He noted that evidence before the alleged onset date confirmed treatment for interstitial cystitis and overactive bladder with some stress incontinence but further discussed how medical records suggest her symptoms were "largely controlled" through botulinum toxin injections and medications" and that "resumption of those medications was quite effective in reducing incontinence symptoms." (*Id.* (citing Ex. 10F/18)). ALJ Thompson also discussed how the evidence did not include additional evaluation to suggest her medications were no longer effective and how Claimant testified to having bladder surgery, resulting in further improvement. (*Id.*). Finally, ALJ Thompson explained that Claimant's report that such symptoms existed even when she was working suggest the symptoms "did not significantly affect her ability to work." (*Id.*). Though determining Claimant's incontinence was not a severe impairment, ALJ Thompson nonetheless found at Step Two that Claimant "would require ready access to a restroom because of these symptoms." (*Id.*).

Then, in the RFC, ALJ Thompson added a restriction that Claimant "requires a work environment that allows access to a restroom." (Tr. 23). Beyond this restriction, ALJ Thompson did not evaluate Claimant's urinary incontinence or related symptoms in the RFC. (*See* Tr. 22-26).

Claimant submits that "ready access to a restroom" from Step Two is distinct from "a work environment that allows access to a restroom" from the RFC. (DN 14, at PageID # 1159). To Claimant, "ready access" indicates the restroom is in close proximity and is easily accessible for

situations requiring immediate attention, such as urinary incontinence. (*Id.* (citing *Brueggen v. Barnhart*, No. 06-C-0154-C, 2006 WL 5999614, at *1, 6 (W.D. Wis. Dec. 15, 2006))). The omission of the "ready access" language in the RFC limitation, Claimant argues, creates an internal inconsistency between the ALJ's findings at Step Two and in the RFC. (*Id.*). Claimant further alleges the internal consistency demonstrates that ALJ Thompson's determination is not supported by substantial evidence in the record. (*Id.* at PageID # 1160).

In addition to the alleged inconsistency, Claimant takes issue with ALJ Thompson failing to discuss the frequency and duration of her bathroom usage as part of the RFC. (*Id.*). Claimant cites several unpublished cases for the proposition that when a restroom limitation is incorporated into an RFC, the ALJ must also make specific findings about the frequency and duration of a claimant's bathroom usage as part of that RFC. (*Id.* (citing *McQuade v. Comm'r of Soc. Sec.*, No. 1:21-cv-834, 2022 WL 4375984, at *3-4 (N.D. Ohio Sept. 22, 2022) (add'l citations omitted)))). ALJ Thompson's failure to make findings regarding duration and frequency of bathroom usage, Claimant argues, warrants remand of the case for further consideration. (*Id.* at PageID # 1161).

In response, the Commissioner points out that Claimant does not challenge ALJ Thompson's evaluation of her urinary impairment or allege that he mischaracterized or failed to consider any relevant evidence of this impairment. (DN 17, at PageID # 1176). While admitting that ALJ Thompson's Step Two language did not "exactly mimic" his later RFC restriction on bathroom usage, the Commissioner maintains the difference has no bearing on his ultimate conclusion that Claimant can perform her past relevant work as well as significant jobs in the national economy. (*Id.*). The Commissioner says the VE testified extensively about Plaintiff's access to a restroom during the administrative hearing and "understood that the ALJ intended to have a restroom close by and accessible at Plaintiff's workplace." (*Id.*). As for the handful of cases

Claimant cited relating to findings as to duration and frequency of bathroom usage, the Commissioner explains they are out-of-district cases and that no regulation or other authority requires an ALJ to make such a finding anytime a restroom is mentioned in an RFC. (*Id.* at PageID # 1177).

First, no error stems from ALJ Thompson not including the word "ready" to qualify Claimant's access to the restroom in the RFC. It is well established that an ALJ's RFC is distinct from the Step Two assessment of whether a claimant has a severe medically determinable impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii); *Hale v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 785, 793 (S.D. Ohio 2017). The Sixth Circuit has construed the second step of the sequential evaluation to be a "de minimis hurdle," *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). As such, "[a] claimant's severe impairments may or may not affect his or her [RFC]. One does not necessarily establish the other." *Id.* (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00-10446-BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)). In other words, any findings made by an ALJ at Step Two do not necessarily correlate to identical limitations in the RFC. ALJ Thompson, accordingly, was not required to adopt the identical language of "ready access to a restroom" from Step Two when formulating the RFC.

Still, ALJs are required to consider all impairments, including those deemed non-severe, in determining a claimant's residual functional capacity determination. Though ALJ Thompson added a restriction to the RFC that Claimant have "a work environment that allows access to a restroom," he otherwise provided no analysis of Claimant's urinary impairments in the RFC. Without further analysis, the Court cannot determine whether ALJ Thompson's RFC limitation as to bathroom access included the "ready access" he had referenced in Step Two. Perhaps the

Commissioner is correct that "ready access" and "a work environment that allows access to the restroom" amount to a distinction without a difference. But because ALJ Thompson failed to address Claimant's non-severe urinary impairment in conjunction with her other impairments in the RFC, the Court cannot be sure.

That leads us to Claimant's next allegation – that ALJ Thompson erred by not discussing the frequency and duration of her bathroom usage as part of the RFC. Claimant is correct that many districts, including some in the Sixth Circuit, have held that "when an ALJ includes an RFC limitation regarding bathroom access, the ALJ should make a specific finding as part of the RFC about the frequency and duration of bathroom usage." *See, e.g., Miles v. Comm'r of Soc. Sec.*, 2024 WL 4218232, at *3 (E.D. Tenn. Sept. 17, 2024) (citing *McQuade*, 2022 WL 4375984, at *3 (add'l citations omitted)). These cases have found remand was necessary because a restriction relating to accessing a restroom is "too vague" to adequately account for a claimant's limitations. *Green v. Astrue,* No. 3:09-CV-331, 2010 WL 2901765, at *4-6 (E.D. Tenn. July 2, 2010); *Miles,* 2024 WL 4218232, at *3. As one court has noted, "ready access to a bathroom is distinct from the question of whether a claimant needs bathroom breaks that may exceed the number or duration of normal breaks during a workday." *Dickerson v. Comm'r of Soc. Sec.*, No. 4:18-CV-4578, 2019 WL 7938518, at *4 (S.D. Tex. Dec. 9, 2019) (quoting *Manker v. Berryhill*, No. 16-CV-10704, 2017 WL 6569719, at *4 (N.D. Ill. Dec. 22, 2017) (quotations omitted) (collecting cases)).

The Court finds some aspects of these unpublished cases cited by Claimant to be distinguishable. Unlike in *Green, Lewis*, and *Miles*, ALJ Thompson found Claimant's incontinence and urinary symptoms were not severe impairments at Step Two. *See Bertran v. Astrue*, No. 1:11CV110, 2012 WL 1245585, at *22-23 (N.D. W. Va. Mar. 19, 2012) (finding *Green* to be factually distinct where ALJ did not find the plaintiff's diarrhea was a severe impairment). And in

making this determination, ALJ Thompson considered evidence that Claimant's urinary symptoms were "largely controlled with botulinum toxin injections and medications," as well as "a bladder surgery resulting in further improvement." (Tr. 20); *see Bertran*, 2012 WL 1245585, at *22-23 (noting that ALJ based his finding of non-severity on evidence that the plaintiff's diarrhea had improved with a gluten-free diet).

But even though ALJ Thompson relied on evidence demonstrating great improvement in Claimant's urinary symptoms to find her impairment was not severe at Step Two, the critical inquiry is whether the ALJ "made a specific finding regarding frequency and duration" of the claimant's bathroom usage after adopting a bathroom restriction in the RFC. *See Green*, 2010 WL 2901765, at *5. In a recent case, this Court clarified that "*Green* and cases applying *Green* do not hold that an ALJ must incorporate a limitation as to frequency and duration of restroom breaks [into the RFC] but only that the ALJ must make a specific finding regarding frequency and duration." *Jessica E. v. Bisignano*, No. 3:25-CV-00208-CRS, 2025 WL 4037162, at *6 (W.D. Ky. Dec. 18, 2025). The Court found that the ALJ in *Jessica E.* complied with the principles from *Green* by "evaluating evidence related to [urinary incontinence] and finding no further limitation was necessary." *Id.*

Here, ALJ Thompson asked the VE during the administrative hearing whether the hypothetical individual presented would have any limitation on the number of restroom breaks she could take during a workday based on the 14% limitation of permissible off-task time. (Tr. 80-81). The VE testified "I don't think there would be a limit on how many breaks, but we are looking at off-task time as a whole." (Tr. 81). Although ALJ Thompson specifically asked about bathroom breaks during the hearing, he made no reference to whether Claimant would need bathroom breaks or the frequency/duration of such breaks in his RFC assessment. As has been noted, ALJ

Thompson completely failed to mention Claimant's incontinence/urinary symptoms in his RFC analysis.

Unlike in *Jessica E.*, the Court cannot find that ALJ Thompson appropriately considered or made a specific finding regarding frequency and duration of bathroom breaks. While it seems ALJ Thompson considered the VE's testimony that no limit on breaks would exist, he failed to make such a finding in his decision. And though ALJ Thompson found Claimant's urinary impairments were "not severe" at Step Two, the Court reiterates that ALJs must consider all severe and non-severe impairments together in the RFC. 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). By failing to discuss Claimant's urinary impairments in the RFC, ALJ Thompson did not develop a clear path of reasoning for the Court to follow. And when an ALJ fails to provide a clear path of reasoning, remand for further proceedings is appropriate for further development and analysis of the issues.

IV. <u>Order</u>

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further administrative proceedings. On remand, the Administrative Law Judge shall further consider Claimant's urinary incontinence in the RFC and at all other steps of the evaluation in compliance with the above analysis. The ALJ may take any further action necessary to complete the administrative record, offer Claimant a new hearing, and issue a new decision.

September 14, 2026

Regina S. Edwards, Magistrate Judge
United States District Court

Copies: Counsel of Record